### STOKES v. UNITED STATES.

District Court, S. D. New York.
May 27, 1937.

578

Stewart & Shearer, of New York City, for petitioner.

Lamar Hardy, U. S. Atty., of New York City (Charles J. Nager, Asst. U. S. Atty., and David McKibben, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

MANDELBAUM, District Judge.

This action is to recover income taxes paid by the plaintiff to the United States for the year 1929.

The basis of the complaint is that in 1929, the plaintiff sustained a loss of $36,719.33 during that year which he contends was incurred in a transaction entered into for profit, although not connected with plaintiff's business, and which loss was rejected by the Commissioner of Internal Revenue as a deduction from plaintiff's gross income for that year.

The defendant in resisting recovery contends that the transaction for which the plaintiff makes claim for refund is not one entered into for profit within the meaning of section 23 (e) of the Revenue Act of 1928 (26 U.S.C.A. § 23 and note), which reads as follows:

"§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

The background of this entire transaction is unusually interesting, as well as indispensable to a complete understanding of the issues involved. Briefly, it is this: In 1909, the plaintiff, I. N. Phelps Stokes, a distinguished citizen and architect by profession, was inspired with the idea of writing a book to be known as "Iconography of Manhattan Island" ["iconography" defined as the art of representation by pictures or images]. After several years of planning, negotiations, and other details necessarily a part of such undertaking, the plaintiff finally entered into a contract in 1915 with one Dodd, a publisher and dealer in rare books. A prospectus was issued inviting subscriptions for this iconography to be published in four volumes. No single volumes were purchasable so that a subscription entailed the purchase of a full set. The printing was limited to 402 copies, 360 of which were offered to the public. The prospectus offered to the public contained the representation that volume 3 of the set would contain a bibliography, and volume 4 a complete index of the work.

After the publishing and delivery of volume 3, it became evident that the plaintiff's expenses would exceed his receipts due to the increase of the cost of production. Thereupon the subscribers were requested to increase the price per volume to between $10 and $30, dependent upon the type of the edition. It appears that all but three subscribers accepted this new arrangement. Again, for reasons beyond the control of the plaintiff, it became necessary to print an additional volume (volume 5) in 1926, and finally volume 6

in 1928, which contained the bibliography and index.

In 1926 plaintiff claimed as a loss, for income tax purposes, the sum of $204,412.-40, the net loss to him upon the first five volumes. This loss was allowed. Volume 6 containing the bibliography and index was, as stated before, issued in 1928.

This brings us directly to the year in question. In 1929, plaintiff received from his publisher the sum of $14,850.14 representing the net receipts derived from the sale of volume 6 after deducting selling commissions. In 1927, 1928, and 1929, the plaintiff expended in the preparation of the last volume sums aggregating $51,509.47 (a further item of $1,200 spent in 1930 is not part of this action). Plaintiff in his claim for refund contends that in computing his income tax for 1929, he is entitled to deduct a loss of $36,719.33 (the difference between the expenses and receipts for volume 6) which he claims was a loss sustained in a transaction entered into for profit (section 23 (e) (2) of the Revenue Act of 1928 [26 U.S.C.A. § 23 and note]).

The defendant argues that volume 6 was a separate and distinct transaction undertaken by the plaintiff not for profit, but with the expectation that a loss would result. The effect of the defendant's argument in this connection is that since the plaintiff knew of a certainty when he entered into the completion of his iconography that a loss would result, this transaction must be treated as a separate and distinct venture undertaken by him and not deductible from income.

The original prospectus contemplated the publication of four volumes, the third and fourth of which would contain, respectively, a bibliography and index to the work. Due to unforeseen conditions, the publication of volume 5 became necessary, and finally volume 6, containing the bibliography and index.

Whether or not the failure to issue the iconography in four volumes, as represented in the prospectus, constitutes a breach of contract with the subscribers, is not the decisive factor in determining whether the publication of volume 6 was a transaction entered into for profit, within the meaning of the statute.

It is obvious that by no stretch of the imagination could the publication and sale of volume 6 result in a profit, nor did the plaintiff believe or even intend that the sale of this single volume could result in a profit.

I must therefore conclude that the publication of volume 6 was not a transaction separable from the publication of the previous five volumes. It needs no discussion that in a work of this character, the bibliography and index is a necessary and integral part of the entire work. It cannot be seriously disputed that without such bibliography and index, the work, as a reference source, would be practically useless.

Taking all volumes as one transaction, therefore, we must revert back to the time when the prospectus was issued in 1915. The evidence preponderates in favor of the plaintiff that he intended that the publication and sale of his iconography would leave him a margin of profit.

There are, however, more serious questions which loom as obstacles to the plaintiff's recovery in this action.

In 1926, the plaintiff, or some one on his behalf, regarded the work as concluded, if not actually, then at least for income tax purposes. In that year, the plaintiff was allowed the sum of $204,000 as his loss sustained on the publication and sale of the first five volumes.

From Plaintiff's Exhibit 3 in evidence and Exhibit C, annexed to the complaint, the language of the internal revenue agent who recommended the allowance, is significant. He said: "The facts are that the publication of the book on which the loss was claimed was projected about 1914 and the first volume was issued in 1916 and *the fifth and final volume* in 1926."

It is clear that the revenue agent could not have recommended the allowance of $204,000 in 1926, unless he was assured that the transaction was entirely completed and closed. The laws and regulations existing at that time were substantially like those at bar. So that, the allowance could only have been made on the basis of a closed and completed transaction.

Although the Government urges that even that allowance was erroneous on the part of the Commissioner of Internal Revenue, the court will not go behind that determination, but will assume, for the purpose of this case, that the finding there was correct.

The plaintiff testified that his income for the year 1926 was unusually high. By

being permitted to deduct this $204,000 loss from his high income. by representing that the transaction was a closed one, he received substantial benefits. by reason of such representation. He is therefore clearly estopped from now claiming that the transaction was actually completed in 1929 by the publication of volume 6.

In Naumkeag Steam Cotton Co. v. U. S. (Ct.Cl.1933) 2 F.Supp. 126, 135, certiorari denied 289 U.S. 749, 53 S.Ct. 694, 77 L. Ed. 1495, the court, in speaking of equitable estoppel said: "The doctrine of equitable estoppel is predicated upon the fact that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which has accepted any benefit."

To the same effect: Ralston Purina Co. v. U. S. (Ct.Ct.) 58 F.(2d) 1065, 1068, certiorari denied 289 U.S. 732, 53 S.Ct. 594, 77 L.Ed. 1481; R. H. Stearns Company v. U. S., 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Southern Abstract & Loan Co. v. Commissioner (C.C.A.) 72 F.(2d) 130; Fifth Avenue Uniform Co., 28 B.T.A. 120; Baltimore & Ohio Ry. Co., 30 B.T.A. 194; Alameda Investment Co. v. McLaughlin (C.C.A.) 33 F.(2d) 120; Rose v. Grant (C. C.A.) 39 F.(2d) 340; Howbert v. Norris (C.C.A.) 72 F.(2d) 753.

In the instant case, the plaintiff obtained a deduction in 1926 on a representation that the iconography was completed and the transaction closed, when in fact volume 6 was in preparation.

It can be readily seen that the plaintiff acquiesced and gained the benefits of the previous position taken, by being permitted to deduct a large loss from a high income. Now, when the statute of limitations has barred the right of the Government to levy a deficiency tax for 1926, the plaintiff attempts to reverse his position in order to secure additional benefits. See Askin & Marine Co. v. Commissioner (C. C.A.) 66 F.(2d). 776; Commissioner v. Liberty Bank & Trust Company (C.C.A.) 59 F.(2d) 320; Lakeview Trust & Saving Bank, 27 B.T.A. 290; Clinton Coal Company v. United States (Ct.Cl.) 5 F.Supp. 777.

■ Even assuming that no equitable estoppel exists to prevent a recovery, plaintiff's publication losses for 1927 and 1928, under no circumstances, could have been deducted from 1929 income.

Pursuant to section 43 of the Revenue Act of 1928 (26 U.S.C.A. § 43 and note) and Article 342 of Regulations 74 of the Revenue Act of 1928, a taxpayer reporting income for tax purposes, made on a cash basis for a certain year, can claim as deductions only those items which he has actually paid out in that year.

The plaintiff incurred expenses in the publication of volume 6 in 1927 and 1928 which he paid in those years. He now seeks to deduct such expenditure from his 1929 income. Accordingly, in compliance with Article 342 and section 43, the plaintiff should have deducted his publication expenses for 1927 and 1928 in the taxable year in which they were paid. The plaintiff's attempt to carry over these expenses and deduct them for his 1929 return is clearly contrary to the above-mentioned statutes and will not be allowed. See Commissioner v. Thatcher & Son (C.C.A.) 76 F.(2d) 900; J. E. Frymier, 5 B.T.A. 758.

■ The last portion of section 43 of the Revenue Act of 1928 may appear to offer a solution of the plaintiff's dilemma. It reads: " * * * unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

But that, too, is of no help to the plaintiff. The clause quoted is governed by Article 341 of Regulations 74 of the Revenue Act of 1928, which provides for a distinct method to be followed by the taxpayer if he desires to claim a deduction or a credit as of a period other than the period in which it was "paid or accrued" or "paid or incurred."

It was incumbent upon the plaintiff to strictly follow the provision of this section in order to avail himself of same and therefore should have deducted his expenses for 1927 and 1928 and sent a statement of facts to the Commissioner of Internal Revenue, requesting that such deductions be allowed to be taken for 1929. The plaintiff's failure to do so bars his claim to any benefits that the provisions of this section offer.

The plaintiff's iconography is an admirable work and of extreme historical importance. Unfortunately, equitable principles, as well as the clear mandates of our tax statutes, applicable to the case at bar, preclude the plaintiff from obtaining the relief he seeks.

The complaint is dismissed and judgment rendered in favor of the defendant.