**SCHERMAN v. HELVERING, Commissioner of Internal Revenue.**
No. 96.

Circuit Court of Appeals, Second Circuit.
Jan. 14, 1935.

Harry J. Leffert, of New York City (Cohen, Cole, Weiss & Wharton, of New York City, of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Berryman Green, Sp. Assts. to Atty. Gen., for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The question in this case is whether Scherman, the taxpayer, shall be allowed to deduct a loss from his income tax for the year 1929, arising from the following facts: He was the originator of a scheme for selling books, known as The Book of the Month Club; it was incorporated and four hundred shares of common stock were issued of which he got one hundred and eighty-nine and his wife, one; Haas, and Haas's wife, owned the rest. He and Haas, finding themselves at odds about the management of the company, agreed that it would be desirable to bring in another person, and decided upon one, Wood. The venture had been amazingly profitable, and Wood was not content with a salary of $20,000, unless he got twenty-five shares in addition, with a guarantee of dividends from the company. To furnish the added inducement Scherman sold ten, and Haas fifteen, shares to Wood at very much less than their value at the time. Scherman deducted as a loss from his gross income the difference between their cost to him and what Wood paid him, and paid a tax calculated on the balance. The Commissioner disallowed the deduction and the Board affirmed his ruling. The question is whether it was a loss under section 23 (e) (1) or section 23 (e) (2) of the Revenue Act of 1928 (26 USCA § 2023 (e) (1, 2).

The transaction between Scherman and Wood, reduced to its legal form was as follows: Scherman sold his shares to Wood in consideration of the money received and of Wood's promise to serve the corporation at a salary which he would not otherwise have been willing to accept. An obligation resulted which Scherman might have enforced, negatively, perhaps by injunction, for the evidence allows the inference that Wood was especially, probably uniquely, available for the service of the company at just that juncture. It can make no difference that Wood's promise was to serve the company and not Scherman himself; or that he was to enter into a contract with the company in performance of his contract with Scherman. The loss suffered by this "disposition" of the shares, if there was a loss, fell within section 23 (e) (1) because it was "incurred in trade or business," or within section 23 (e) (2) because "entered into for profit." Indeed, we do not understand that this is disputed; the trouble is that the Commissioner held and the Board found that no loss was proven. If it existed, it was the difference between the "amount realized" as defined by section 111 of the act (26 USCA § 2111), and the "basis" which was the cost of the shares; that subtrahend was fixed. The minuend is "the amount realized" and that is defined as "the sum of any money received plus the fair market value of the property (other than money) received." The only "property received" was the right of action against Wood just mentioned. Passing the question whether it may be treated as property for the purposes of this statute, we have already held that the phrase "fair market value," does not include everything to which a value may be assigned by the opinion of experts. Helvering v. Walbridge (C. C. A.) 70 F.(2d) 683. Cf. Houghton v. Helvering, 71 F.(2d) 656 (C. C. A. 2). A contract between a shareholder and the prospective manager of a company, even if it be property, certainly has nothing that by any stretch of words can be regarded as a "fair market value," as we defined it in the case just cited. Nor can Scherman be supposed to have received any "property" indirectly as a shareholder of the company. As we have said, the company also contracted with Wood; Scherman's shares might rise in value for that reason, and larger dividends might ensue. But none of these increments in value were present "property"; certainly not the undeclared dividends, equally not the increase in value of the shares, until they were sold.

This last consideration also shows the injustice of disallowing the loss at the present time; it is now or never. If Wood's accession did turn out to be as profitable as Scherman and Haas expected, there would be larger dividends if the shares were kept, and a higher sale price if they were sold. But the shareholders could not set off this loss—for there surely was a loss de facto—against either of these. There would be no injustice in this if Scherman had given Wood the shares because a gift is not "entered into for profit"; but this was a business venture, in which if Scherman is to be charged with the profits—as he will be—he ought to be allowed to deduct what they have cost him.

Order reversed; deficiency expunged.