## PAINE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3348.

Circuit Court of Appeals, First Circuit.

March 2, 1939.

John W. Townsend, of Washington, D. C. (Joseph Wiggin, of Boston, Mass., on the brief), for Frank C. Paine.

Loring W. Post, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals deter-

mining a deficiency of $12,389.46 in the tax of the petitioner, according to his return for the year 1930.

The Board found the following facts: During the years 1929 and 1930 the petitioner, a member of the firm doing business under the name of Paine, Belknap & Skene, was engaged in the business of designing and the construction of pleasure and racing sail boats. The chief source of his income during 1930, however, was from investments, although 85 percent of his time from 1922 to 1930 had been spent as a naval architect. He was also the owner of the controlling interest in the George Lawley & Sons, Inc., which prior to 1930 was engaged in the construction and outfitting of such boats.

Petitioner had been accustomed to advertise in a small way in yachting magazines from 1922 up to and including 1930.

Prior to 1929 he had designed and built from seven to ten small sail boats and also had designed the schooner Thebaud, and had been engaged in sailing racing boats seven or eight years since arriving at manhood, and four or five years during his minority.

Desiring to get his name before the public as a designer and builder of large racing yachts, he conceived the idea of organizing a syndicate to build a yacht to enter into the trials to determine the yacht to be selected to compete in the international yacht races as the defender of the "American Cup," to take place in 1930.

His first attempt to interest men of means to furnish the necessary funds to build, equip and sail such a yacht was unsuccessful. However, being a man of large means, he finally, by agreeing himself to furnish $100,000 in cash for the project, succeeded in interesting others to advance the additional amounts necessary to design, build, equip and sail a yacht in the trial races and, if successful, to compete in the main event.

Having interested others who agreed to contribute between $300,000 and $400,000 in addition to his own contribution, a corporation was organized under the name of New England Boat Company, in order to limit the liability beyond the voluntary advances of the contributors. Paine received for his $100,000 contribution 1,000 shares of stock of the Boat Company.

His personal contribution was upon condition that he should be given a free hand in designing and supervising the construction and the rigging of the new yacht, and in making any improvements that might be suggested during the trials. The Yankee, as the new yacht was named, met with considerable success in the preliminary trials and in several later trials and races, but was not selected in 1930 as the American representative in the international race, as it proved to be a "heavy weather" boat, and the judges who selected the yacht to defend the "Cup" decided that a "light weather" boat was more likely to be successful.

In November, 1930, following the rejection of the Yankee as the defender of the "Cup," and realizing, in view of the financial depression then existing, that his stock in the Boat Company had greatly depreciated, if it was not practically worthless as a marketable asset, in order to take advantage of any loss he had incurred in determining his income tax for that year, and also realizing that the Revenue Department probably would not allow him a loss in reduction of his income tax unless he was able definitely to establish it by a sale of his stock in the Boat Company, he took steps to sell his shares of stock at public auction. The sale, which the Board of Tax Appeals found was a bona fide sale, resulted in a receipt of only $10 for his 1,000 shares of stock, which determined his monetary loss during 1930, and which, it is agreed, was $99,990.

He now seeks to have this loss allowed in reduction of his income tax for 1930 under Sec. 23 (e) of the 1928 Revenue Act, 26 U.S.C.A. § 23 note, which provides as follows:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year \* \* \*

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

Therefore, the questions are: (1) Was the loss sustained by the taxpayer on the stock of the New England Boat Company during 1930 incurred in the trade or business of the taxpayer? (2) If not, was it incurred in any transaction entered into for profit, though not connected with his trade or business?

It is true that the taxpayer's trade or business was, in part, at least, the designing and construction of sailing boats, but the designing and construction of a boat of the type suitable for defending the so-called American Cup had never been a part of his business, or that of his firm.

The designing and construction of a single boat suitable for defending the American Cup, when constructed by one of the competitors, cannot be classified as a trade or business, even though he may have been engaged in a general business of designing and constructing smaller boats that may have a more or less staple market. Such a boat is not suitable to be used as a pleasure yacht and must of necessity be expensive to operate and therefore would have a very limited market for sale. Commissioner of Internal Revenue v. Crescent Leather Co., 1 Cir., 40 F.2d 833; Hines et al. v. Commissioner of Internal Revenue, 7 Cir., 58 F.2d 29, 31; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

The building of a single large racing yacht cannot be compared to a business of conducting racing stables, or dog kennels, which are built up after several years of operation and development and may eventually result in actual money profit.

■ The fact that he organized a syndicate to furnish the money, and a corporation to limit the liability of the owners indicates clearly that he considered it a single transaction apart from his regular business of designing and constructing sail boats. Obviously this venture did not take place as a part of the business of his firm, but was a separate isolated transaction by this taxpayer. His loss, therefore, was not deductible under Sec. 23 (e) (1), supra.

■ The taxpayer's purpose in constructing a racing yacht of this type, he says, was to get his name before the public as a designer and builder of large racing boats. He admits, however, that he never expected to realize more than 25% to 50% of his actual money outlay, or, in other words, he did not expect a profit from the venture, but a loss of from $25,000 to $50,000. Assuming he received some favorable advertising from the considerable success of the Yankee as a racing yacht, as he actually did, yet he admits that profit was not his motive in designing and constructing the Yankee.

It was not a money-making proposition, as he admits. He expected to take a monetary loss. The international racing of large yachts has been referred to as a sporting proposition, and, we think, not inaptly. However that may be, the building of a single yacht of this type at very great expense, with the additional expense of sailing it during each season, is only available for the very wealthy, and except without expensive alterations such boats are not, after the trial races, or if selected as the defender, suitable for pleasure or business, but only to enter competitive contests. As the Judge said in Lihme v. Anderson, D.C., 18 F.Supp. 566:

"It is for him [the taxpayer] to show that the transaction of purchase and sale of the cruiser was one 'entered into for profit.' I am of opinion that he has not shown it. It is common knowledge that very few persons who buy boats designed for pleasure do so in order to make money. It is different with those who make their livelihood buying and selling such vessels. But with others the motive is not the profit motive; it is the pleasure they anticipate from use of the yacht.

"The plaintiff purchased the cruiser for his personal use, to take trips back and forth to his business in New York, and to take pleasure cruises. He did not purchase primarily for investment or for speculation. He was not skilled in the value of cruisers. It may be that he would not have acquired the cruiser but for the lure of a price which he thought low, low enough that in the event of resale he might make some money. The money-making possibility, however, was not the prime thing. The transaction was not one entered into for profit, and the loss was not deductible."

■ It cannot be said, we think, that the taxpayer on entering into this venture was motivated by the expectation of profit. He says he was not, and it is obvious, we think, that he could not have anticipated a profit from an expenditure of over $400,000 in constructing and equipping a yacht of this type. The profit motive to one contributing to the cost of construction and operation of such a boat during the trial races, and especially if selected to defend the "Cup," is too remote to permit a deduction of any losses resulting under Sec. 23 (e) (2), above referred to. Possible increased reputation as a naval architect is also too intangible and remote to constitute a profit motive within the meaning of the statute.

The order and decision of the Board of Tax Appeals is affirmed.