CHARLES BENSON WIGTON, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 16254.    Promulgated September 19, 1949.

*Joseph J. Seaman, Esq.*, for the petitioner.
*Stanley B. Herzfeld, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: Petitioner argues that he was legally obligated to indemnify the Wigton-Abbott Corporation against loss and that he paid $6,456.02 to the corporation pursuant to that obligation. He further argues that the loss was incurred in his trade or business, or in a transaction entered into for profit, and that it was accordingly deductible by him under section 23 (e) of the Internal Revenue Code.[1]

Respondent's position is that petitioner's written promise of indemnity to the corporation lacked consideration and, therefore, was not binding. Furthermore, he maintains, even if the promise was binding, the payment by petitioner was not a deductible loss under section 23 (e), or any other section of the Internal Revenue Code.

Obviously, the payment was made pursuant to a legal obligation. The consideration for petitioner's promise of indemnity was the purchase by the corporation of the shares of Columbia Gas & Electric Co. stock. Respondent argues that the performance of a preexisting legal duty is not consideration. But there was clearly no legal duty on the part of the corporation, an engineering concern, to speculate in stocks upon the orders of its president. Hence, the consideration for petitioner's promise of indemnity was the corporation's purchase of the stock, later ratified by the board of directors.

Although the activity of an executive of a corporation has been recognized as a trade or business, *George S. Groves*, 38 B. T. A. 727, and *Ralph C. Holmes*, 37 B. T. A. 865, it would only be under most exceptional circumstances, which do not exist in the case at bar, that the guaranteeing of the investments of a corporation of which a taxpayer is president would be considered as a part of the president's trade or business. Therefore, petitioner's loss can not be deducted under section 23 (e) (1) of the Internal Revenue Code.

In considering whether or not petitioner's loss may be deducted under section 23 (e) (2) of the code, providing for losses incurred "in

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
\* \* \* \* \* \* \*
(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
(1) if incurred in trade or business ; or
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business :
\* \* \* \* \* \* \*

any transaction entered into for profit, though not connected with the trade or business," our first problem is to determine whether petitioner hoped to receive a profit through the issuing of the guarantee. If we assume for the argument that he hoped that Wigton-Abbott Corporation would realize either capital gains or dividends from its purchase of Columbia Gas & Electric stock and that he would thereby profit from increased dividends on his stock in Wigton-Abbott Corporation, under the facts in this case we still have no basis to conclude that petitioner's guarantee of the investment had anything to do with his anticipation of profit.

In our factual finding that the petitioner's authority was such that the purchase would have been made and approved by the corporation without any guarantee and that the guarantee was merely a gratuitous gesture on his part, we have closely paraphrased his own words. Since he was the majority stockholder and the corporation itself would have acted without the guarantee, his gratuitous gesture was evidently made to protect himself from any possible criticism from the minority stockholders for an investment which was somewhat speculative. The avoidance of such criticism from the minority stockholders would have supplied petitioner with an understandable motive for making the guarantee and, when the guarantee was once made to the corporation and thereafter acted upon by the board of directors in approving the purchase, it became a consideration moving from the petitioner to the corporation upon which an enforceable obligation could be based, as we have held above.

However, all such factors have little to do with increasing petitioner's hope for future profit from the corporation's investment in Columbia Gas & Electric Co. stock when petitioner admits that the corporation would have made the stock purchases without any guarantee at all. It is therefore our conclusion that the guarantee was made for purposes other than to procure profit and that the loss resulting from the guarantee is not a deductible one.

The second objection to the allowance of petitioner's loss deduction is that, even if we overlook the absence of any connection between petitioner's guarantee and his hope of profit, there is still an insufficiently direct connection between the purchase of the stock in Columbia Gas & Electric Co. by Wigton-Abbott Corporation and the possibility of profit inuring to petitioner on which to base a loss deduction in petitioner's taxable income arising from losses growing out of the Wigton-Abbott Corporation investment.

The purchase of Columbia Gas & Electric stock was made by the Wigton-Abbott Corporation, not by petitioner. Thus, no gain or loss on the sale of the stock could be directly made or incurred by him.

Petitioner maintains that as majority stockholder in the corporation he stood to gain if the corporation profited from the purchase of Columbia Gas & Electric stock. A single, relatively small investment, however, on the part of a corporation would not necessarily inure to the benefit of a stockholder in the form of increased value for his stock or of dividends, even if profit resulted. The profit would go to the corporation, not to the stockholder, and the stockholder could only benefit indirectly, if at all. It would be a far cry from the purpose of the statute to hold that an investment of a corporation was a transaction entered into for profit as to an individual stockholder simply because he might indirectly benefit from the investment, or because he agreed to indemnify the corporation against loss.

In *Goldsborough* v. *Burnet*, 46 Fed. (2d) 432 (CCA–4, 1931), the taxpayer's mother-in-law, who received most of her support from him, purchased in 1922 certain corporate securities solely at the taxpayer's instance, and at the time of the purchase the taxpayer stated to his mother-in-law that should she sustain a loss by reason of such purchase he would reimburse her for the amount so lost. She did sustain a loss in 1922 as a result of the purchase, and the taxpayer, in accordance with his promise, paid her the sum of $5,757.25. The taxpayer deducted this sum as a loss in his 1922 return and the Commissioner disallowed the loss. Both the Board of Tax Appeals (18 B. T. A. 181) and the Circuit Court upheld the disallowance by the Commissioner.

In its opinion in that case the Circuit Court said (p. 433):

It is contended on behalf of petitioner that he entered into the transaction for profit. because of the fact that if his mother-in-law had gained from the transaction he (the petitioner) would have been correspondingly benefited, because, as his mother-in-law's income increased. the amount he would have to contribute to her maintenance and support would decrease. However commendable we may feel was petitioner's course in reimbursing his mother-in-law for her loss, we cannot but reach the conclusion that the benefit that would have accrued to him had his mother-in-law gained in the transaction is too vague and indefinite to amount to a profit. The profit in the transaction, if there had been any profit, would have gone directly to petitioner's mother-in-law and not to the petitioner, and the petitioner would have benefited only in an indirect way.

\* \* \* \* \* \* \*

As stated in *Read* v. *Tidewater Coal Exchange, Inc.*, 13 Del. Ch. 195, 210, 116 A. 898, 904, profit "must be something of a tangible or pecuniary nature. Intangible benefits not capable of measurement in definite terms, though of value to the recipients,. cannot be called profits."

Petitioner relies primarily upon *Ernest E. Lloyd*, 8 B. T. A. 1029, and *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214. In the former case the taxpayer advanced his own money to develop a secret formula which he contemplated to have exploited commercially by a corpo-

ration of which the taxpayer was the president. The development of the formula was a failure and the taxpayer deducted the expenses incurred thereby from his taxable income, which deduction was approved by the Board of Tax Appeals.

It is at once apparent that in the *Lloyd* case the corporation's president was investing his own funds to increase the manufacturing capacity of his own corporation and such increase, if it had occurred, would have had a direct connection with his occupation as a corporation president and would have materially affected his dividend income as a stockholder. In the case at bar the petitioner did not invest his own funds in any attempted promotion of corporate business. Instead, he induced the corporation to deplete its operating funds by investing in corporate stock entirely outside of its own field of activity.

In the *Lloyd-Smith* case the taxpayer, in order to induce investors to buy bonds necessary to keep a corporation in which she was a heavy stockholder in operation, personally guaranteed the repayment of the bonds. The corporation defaulted and the taxpayer sought a loss deduction. The Board of Tax Appeals permitted such a deduction for the money paid by her in settlement of her guarantee obligations. Here again, as in the *Lloyd* case, the loss was sustained by the taxpayer in promoting the regular business of the corporation in which the taxpayer was heavily involved. It was the business for which the corporation was organized and out of which the taxpayer's stockholders might reasonably anticipate direct profits. There was a direct connection between the anticipation of such profits and the expenditure of the funds of the taxpayer. In the case at bar the petitioner's hope of profit was indirect from the expenditure of the funds of the corporation and the hope of profit was not connected with the corporation's established activities.

Therefore, because petitioner's guarantee did not cause the investment out of which petitioner claimed he hoped to receive profit, and also because the profit which petitioner claims to have anticipated was too remote from the investment by Wigton-Abbott Corporation to form the basis for a loss deduction to petitioner, it is our conclusion that the respondent was correct in refusing to recognize petitioner's loss deduction.

Reviewed by the court.

*Decision will be entered for the respondent.*