OWEN et ux. v. UNITED STATES.

Civ. 131–49.

United States District Court
D. Nebraska. Omaha Division.

Sept. 13, 1951.

David W. Swarr and Edson Smith, of the firm of Swarr, May, Royce, Smith & Story, Omaha, Neb., for plaintiffs.

Joseph T. Votava, U. S. Atty. for the District of Nebraska, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This is an action by Fred E. Owen and Lizette C. Owen, husband and wife, against the United States, to recover certain taxes alleged to have been erroneously and illegally assessed. Plaintiffs have complied with all the required conditions precedent to the institution of this action and this Court has jurisdiction since the claim does not exceed $10,000. 28 U.S.C.A. § 1346 (a)(1). The case was tried to the Court without a jury and the evidence consists of a comprehensive stipulation of fact, a few documentary exhibits and the testimony of two witnesses. There is little dispute as to the basic or primary facts. The sole issue in the case is whether or not a short term capital loss claimed by plaintiffs on the sale of Paxton & Vierling Iron Works common stock is allowable as a deduction for income tax purposes. The circumstances surrounding the alleged loss are these:

Paxton & Vierling Iron Works is a corporation organized in 1885 under the laws of the state of Nebraska and its principal office is located at 5th Street and Avenue H, Carter Lake, Iowa. It is engaged in the manufacture of structural steel, ornamental iron, other steel fabrications and parts for the repair of railroad cars and other steel construction. As of the year 1937, there were 2,247 shares of common stock outstanding. As of September 1, 1943, there were 1,452 shares outstanding. As of August 31, 1943, this corporation was active in the performance of work resulting from or connected with war time defense production. Its business had progressively increased from pre-war scale as indicated by its gross sales for the years set forth below:

| Year | Gross Sales |
| --- | --- |
| 1939 | 241,847.40 |
| 1940 | 510,525.90 |
| 1941 | 896,901.49 |
| 1942 | 846,768.54 |
| 1943 | 1,519,663.38 |

From 1937, to August 31, 1943, Duane T. Molthop and F. E. Owen owned all the outstanding capital stock of the Paxton & Vierling Iron Works. Each owned one-half of the shares. Owen purchased his stock at $62.50 per share. During all this period of time Molthop was president of the company and Owen was vice-president and general manager, positions which they had held previous to their becoming stockholders. On October 8, 1937, they became the sole directors of the corporation and continued as such until May 20, 1939, when William E. Ritchie became an additional director representing the trustee for former stockholders to whom Owen and Molthop owed a very substantial amount of money as the purchase price of much of their stock. This trust may be referred to as the Vierling Trust.

During all this period of time, Molthop resided in Chicago, Illinois; F. E. Owen lived in Omaha, Nebraska, and was active in the management of the company. Molthop was president of the Vierling Steel Works in Chicago and active in that

business. Friction soon developed between Owen and Molthop, who interferred with Owen's management of the business and sometimes made contracts to be carried out by the Vierling Steel Works and the Paxton & Vierling Iron Works which resulted in losses to the Paxton & Vierling Iron Works and profits to the Vierling Steel Works. This situation became intolerable to Owen, who sought a means of eliminating Molthop from participation in the management of the company. The Vierling Trust was also interested in solving the problem in order that its security be not impaired. Mr. Ritchie, who is an able and experienced lawyer, attempted to work out a solution. The plan which he formulated was accepted by Molthop and F. E. Owen, and, as slightly modified, was consummated August 31, 1943.

The plan, as executed, was substantially this: Fred E. Owen purchased at $127.766 per share the entire 1,123½ shares of stock in the Paxton & Vierling Iron Works held by Molthop. The purchase price of the stock, $143,545.07, was paid by F. E. Owen to Molthop in the following manner:

| | |
|---|---:|
| Cash to Molthop | $ 65,000.00 |
| Credit on account of obligation of Molthop to F. E. Owen | 6,612.34 |
| Credit to D. T. Molthop on account of 60 shares of Vierling Steel Works preferred stock | 6,000.00 |
| Cash to Omaha National Bank to apply on note to Vierling Trust | 30,000.00 |
| Cash to Omaha National Bank to apply on one-half of the joint note of Owen and Molthop | 35,932.73 |
| Total | $143,545.07 |

In order to raise sufficient cash to finance the purchase of the Molthop stock in the manner set forth above, it was necessary for F. E. Owen to sell some of the Paxton & Vierling stock previously held by him and some of the stock acquired from Molthop. He disposed of this stock on August 31, 1943, in the manner shown in the table below:

| | Molthop Stock | Stock Previously Held | Amount Received |
|---|---|---|---|
| At $90.00 a share | | | |
| To Charles F. Betcke and wife | 390 | | $ 35,100.00 |
| To Ben F. Owen and wife | 166 | 55 | 19,890.00 |
| To H. D. Coe | 40 | 16 | 5,040.00 |
| At $100.00 a share | | | |
| To Ed Owen | 60 | | 6,000.00 |
| To Vierling Trust | 225 | 75 | 30,000.00 |
| To Paxton & Vierling (Treasury) | | 495 | 49,500.00 |
| Stock disposed of | 881 | 641 | $145,530.00 |

Of the 1,123½ shares of stock purchased from Molthop, F. E. Owen sold 881 shares and retained only 242½ shares; and of the 1,123½ shares of stock which he had held since 1937, Owen sold 641 shares and retained only 482½ shares. Consequently, at the close of the day, August 31, 1943, F. E. Owen owned only 725 shares of stock in the Paxton & Vierling Iron Works. However, Molthop had been eliminated, and Owen had gained control of the corporation because in the course of the transaction of August 31, 1943, the Paxton & Vierling Iron Works purchased 795 shares of its own stock, thereby reducing the number of shares outstanding to 1452. F. E. Owen held just one less than one-half of these shares; he had considerably more shares than any other individual stockholder; and he retained an option to purchase, and later did purchase, 300 of the 795 shares of stock held by the corporate Treasury.

These 300 shares had been transferred by Owen to the Vierling Trust in consideration of a $30,000 credit against the joint note of Molthop and Owen, which the trust held in connection with the original purchase of the Paxton & Vierling stock by these parties in 1937. The Vierling Trust immediately transferred these 300 shares to the corporation, taking the corporation's note, guaranteed by Owen, for $30,000; and Owen had an option to, and later did, acquire these shares by payment of the note. The parties agree that the disposition on August 31, 1943, of these 300 shares, subject to the option to repurchase, constituted a wash sale and the loss in connection therewith is not allowable as a deduction from gross income for the year in question. See 26 U.S.C.A. § 118.

F. E. Owen used $135,530 of the $145,-530 received from the sale of part of the Molthop stock and stock previously held by Owen, to finance the purchase of stock from Molthop. In this connection, it should be mentioned that the purchase price of the Molthop stock ($143,545.07) was paid by Owen with the following assets:

| | |
|---|---|
| Receipts from the sale of Paxton & Vierling Stock | $135,540.00 |
| Obligation of Molthop to Owen | 6,612.34 |
| Cash of F. E. Owen | 1,392.73 |
| Total | $143,545.07 |

Owen used $9,990 of the $145,530 received from the sale of part of the Molthop stock and stock previously held by Owen, together with $25,942.73 of his other case, to pay his half ($35,932.73) of the joint Owen-Molthop note to the Omaha National Bank. In order to complete the transaction of August 31, 1943, it seems that this note had to be discharged so that certain stock held as security would be released for sale.

An examination of the record shows that all the stock transfers in connection with the transaction of August 31, 1943, were bona fide and that stock certificates were issued substantially in accordance with the plan, as executed. Charles F. Betcke, Ben F. Owen, H. D. Coe and Ed-ward F. Owen have continuously, to the present time, held the same stock issued to them on August 31, 1943. F. E. Owen had no option or right to purchase any of the stock issued to them. The stock issued to F. E. Owen on August 31, 1943, has continued to be owned by him, or his wife and son and daughter, to whom he has made transfers.

Fred E. Owen does not know what the market value of the stock, as of August 31, 1943, would be. He was willing to pay $127.766 per share for the 1,123½ shares owned by D. T. Molthop because by so doing he gained control of the corporation and he felt that with control in his hands he could make the corporation into a successful money making enterprise. He was willing to sell a minority interest in the stock of the corporation for $90 per share to Betcke, Ben F. Owen and H. D. Coe because he had to sell the stock he sold in order to finance the stock purchase and he knew of no other prospective purchasers who were willing to pay more for the stock than the $90 he received. William Ritchie had interested Betcke and Ben F. Owen in the deal.

### Discussion.

In executing the transaction of August 31, 1943, the taxpayer sold 1,522 shares of Paxton & Vierling stock. 641 shares were sold at a profit and the taxpayer, in the manner prescribed by the Internal Revenue Code, 26 U.S.C.A. § 117, reported the profit as income. 881 shares were sold at a loss. Of these, 60 shares were sold to Ed Owen and no deduction was claimed in connection therewith; and 225 shares were sold to the Vierling Trust, subject to an option to repurchase. The sale of these 225 shares, it is admitted by the parties, constituted a wash sale and no deduction is presently allowable. 26 U.S.C.A. § 118. The only issue undetermined is whether the loss resulting from the sale of the remaining 596 shares of Paxton & Vierling stock is deductible, as claimed by the taxpayer.

In computing net income there should be allowed as a deduction, in the case of an individual, losses sustained during the taxable year if incurred in any transaction

entered into for profit, though not connected with a trade or business. 26 U.S. C.A. § 23(e)(2).

### 1. Actual Loss

In general, losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events and actually sustained during the taxable period for which allowed. 26 C.F.R. (1949 Ed.) 29.23(e)–1(b). In this connection, counsel for the Government contends that no actual loss was sustained by F. E. Owen in consummation of the plan whereby he secured control of the Paxton & Vierling Iron Works on August 31, 1943. With this contention the Court is unable to agree.

A loss is the expiration of disappearance of any recognizable resource or economic factor without full compensation or recovery. Paton, Accountant's Handbook, p. 141. In whatever light we view the transaction of August 31, 1943, it is clear that the taxpayer suffered an actual economic loss.

a) Considering, in an isolated manner, the sale of only the 596 shares of stock, which are in substance the shares involved in this particular lawsuit, the taxpayer has suffered an actual loss of $22,508.53, the difference between the cost (basis) of the stock, $76,148.53, and the amount realized, $53,640. This is the loss which the law entitles him to deduct from gross income in computing taxable net income, since the transaction involved the sale of capital assets which were held for less than six months. 26 U.S.C.A. §§ 23(g) and 117.

b) Considering the sale of all the stock transferred by F. E. Owen in consummation of the transaction of August 31, 1943, the total loss may be computed as follows:

| Cost of stock sold by Owen: | | |
|---|---|---|
| 641 shares @ $62.50 per share | $ 40,067.50 | |
| 881 shares @ $127.766 per share | 112,561.85 | |
| Total Cost | | $152,629.35 |
| Amount realized by sale: | | |
| 667 shares @ $90.00 per share | $ 60,030.00 | |
| 885 shares @ $100.00 per share | 85,500.00 | |
| | | 145,530.00 |
| | | $ 7,099.35 |

This computation is not intended to represent the tax loss because it does not take into account the percentage reduction for long term transactions as authorized by the Code, 26 U.S.C.A. § 117, nor does it take into account the wash sale. The computation is merely inserted to indicate that the taxpayer actually suffered a loss on the overall transaction.

Contrary to the contention of the Government, the taxpayer was not in the same economic position after the transaction as before. Prior to August 31, 1943, Fred Owen owned 1,123½ shares of stock in the Paxton & Vierling Iron Works; after the transaction he owned only 795 shares. Using $90 a share as the market value of the stock on August 31, 1943,[1] Mr. Owen's stock holdings were diminished $39,855 by the transaction. Here again, the Court wants to make it clear that this figure does not represent the deductible loss for tax purposes, but is merely inserted to show the economic detriment to the taxpayer resulting from the transaction. It should also be pointed out that the use of market value in the foregoing computation gives a resultant figure which includes the unrealized profit as well as the realized loss. Further proof that Owen was not in the same position after the transaction as before, may be obtained from a

[1]. Mr. Hyder, a witness for the Government, concluded that under the facts stipulated the fair market value of the Paxton & Vierling Iron Works common stock was not more than $90 a share.

860

comparison of the value of the corporate assets represented by Owen's stock holdings prior to the transaction with the value of the assets represented by his stock holdings after the transaction. Before the transaction Fred Owen owned exactly one-half of the outstanding stock of the corporation, which may be said to have represented one-half of the value of the corporate assets at that time. After the transaction he owned slightly less than one-half of the corporate stock, but the corporation's assets had been diminished $79,500 in the course of the transaction because the corporation purchased 795 shares of its own stock. Consequently, the stock held by Fred Owen before the transaction represented slightly over $39,750 more value in corporate assets than the stock held by Owen after the transaction.

■ From what has been said, the Court concludes that Fred Owen actually sustained a loss in the transaction of August 31, 1943, and that he was not in the same position after the transaction as before.

### 2. Transaction Entered into for Profit

■ The loss mentioned above was sustained in a transaction entered into for profit. In 1937, when Fred Owen originally acquired one-half of the stock of the Paxton & Vierling Iron Works, he intended to profit from the business of that company. In fact, he personally managed the company to make sure that profits would be forthcoming. However, Molthop, president of the company and the only other stockholder, interfered with Owen's management and entered into contracts which resulted in losses to the company. Owen realized that elimination of Molthop's interference with the corporate management would decrease the company's losses, thereby increasing its profits. Consequently, Owen, in order to gain control of the corporation so that he could make it into a successful money making enterprise, entered into the transaction of August 31, 1943. The taxpayer's primary motive for executing this scheme, whereby he gained control of the Paxton & Vierling Iron Works, was to profit, and therefore the transaction of August 31, 1943, was one entered into by the taxpayer for profit within the meaning of Section 23(e)(2) of the Internal Revenue Code. 26 U.S.C.A. § 23 (e)(2). Cf. Early v. Atkinson, 4 Cir., 1949, 175 F.2d 118. It is true that Owen might have known that he would have to sell some of the shares purchased from Molthop at a loss, but the sale of this stock was an integral component of the entire indivisible transaction and it is the general rule that if the original transaction, consisting of several integral components, was entered into for profit, all the components making up the one indivisible transaction are part of a profit transaction. Cf. Stokes v. United States, D.C.N.Y.1937, 19 F.Supp. 577. And counsel for the Government seems to agree that the several steps employed in carrying out the taxpayer's plan to gain control of the corporation should be regarded as a single transaction for tax purposes. See Commissioner of Internal Revenue v. Ashland Oil & R. Co., 6 Cir., 1938, 99 F.2d 588; Helvering v. Security Savings & Commercial Bank, 4 Cir., 1934, 72 F.2d 874.

### 3. Control

■ Counsel for the Government argues that Owen purchased Molthop's stock at more than the market value, and that the difference between the market value and the price Owen paid for the stock was paid for control and should not be considered as part of the cost of the stock in determining Owen's loss. This Court does not understand control to be something distinct from, and independent of, stock ownership. "A share of stock is one of the proportionate integers or units of capital stock, and is the interest or right which the owner or holder thereof has in the management of the corporation and to share in the profits thereof and in the property and assets thereof upon dissolution, after payment of the corporate debts and obligations." 11 Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 5083, p. 28. Whenever a certain stockholder acquires more than one-half of a corporation's outstanding stock, then that stockholder may be said to have control of the corporation because his interest in the management of the corporation is proportionally greater than the interest of any and

all of the other stockholders and his vote in regard to the management of the corporation will ordinarily control. This control is not, however, distinct from and independent of the shares of stock, but flows as an incident of the combination of the rights which inhere in and are an essential part of the individual shares of stock. Consequently, control is not a separate asset which may be purchased and sold independent of the stock and the Court is unable to find any justification for considering it as such. The insurmountable difficulty of ascertaining the cost of acquisition and the amount recovered upon a subsequent disposition make it readily apparent that computation of a gain or loss on the transfer of control would be wholly impracticable. Further, since the Revenue Laws do not provide for such a compensation, there is no possible way by which a taxpayer could recover, for tax purposes, the capital which he invested in control, if it were not considered as part of the cost of the stock.

### 4. Cases Distinguished

Government counsel's reliance upon the cases of Tube Bar, Inc., v. Commissioner, 15 T.C. 922 and Cullen v. Commissioner, 14 T.C. 368, is, in the Court's opinion, misplaced. Both cases are distinguishable from the case at bar.

In Cullen v. Commissioner, supra, the taxpayer, who owned twenty-five per cent of the capital stock of a corporation, bought all of the remaining stock outstanding in order to liquidate the corporation and operate the business as a sole proprietorship, because of the strained personal relationship between the taxpayer and the other stockholders. He paid more for the stock than the known book value of the tangible assets and sought to deduct as a loss the difference between what he paid and the book value of the assets transferred to him on dissolution. The Tax Court disallowed the loss pointing out that—"After acquiring the stock and dissolving the corporation pursuant to his plan, he had neither more nor less than he paid for. As to whether petitioner could have bought the stock for less than he paid, we venture no opinion. We do conclude that he had everything he

paid for when he bought all the corporation's stock." It is clear that no loss had been realized in the Cullen case because the taxpayer had not disposed of anything that he had acquired. But this is not true of the case under consideration because Owen, the taxpayer, has disposed of a substantial portion of the stock purchased from Molthop.

In Tube Bar Inc. v. Commissioner, supra, the taxpayer, in order to acquire a liquor license, purchased the premises for which a license had been issued and the chattels therein, and was denied a loss deduction for the difference between what he paid for the license, premises and chattels and the amount realized on the sale of the premises and chattels. The taxpayer used as a basis for determining his loss the cost of three assets and as the amount realized the sale price of only two of these assets; and this is obviously not the proper method of computing a loss. However, there is no parallel between the Tube Bar case and the case now under consideration.

### Conclusion

If the Government's position were sustained, the taxpayer would be prevented from recovering a substantial amount of capital invested in his stock. We call attention to the words of the esteemed Judge Learned Hand in the case of Scherman v. Helvering, 2 Cir., 1935, 74 F.2d 742, 743, a case factually different, but somewhat similar in principle to the case at bar. "This last consideration also shows the injustice of disallowing the loss at the present time; it is now or never. * * * this was a business venture in which if Scherman is to be charged with the profits—as he will be —he ought to be allowed to deduct what they have cost him."

For the reasons stated in this memorandum, the Court has reached the conclusion that it was erroneous for the Commissioner of Internal Revenue to disallow the loss claimed. The taxpayer is entitled to recover the full amount sued for.

Counsel for plaintiffs shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.