GEORGE F. ARATA AND CAROLYN M. ARATA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67293. Filed November 12, 1958.

*Alfred C. B. McNevin, Esq.*, and *Paul Macdonald, Esq.*, for the petitioners.

*Raymond T. Mahon, Esq.*, for the respondent.

Bruce, *Judge:* The respondent determined a deficiency in petitioners' income tax and additions to tax as follows:

| Year | Deficiency | Addition to tax | |
|---|---|---|---|
| | | Sec. 294(d)(2) | Sec. 294(d).(1)(A) |
| 1953 | $19,701.88 | $714.13 | $1,071.18 |

Certain adjustments determined by respondent have not been contested. The following issues are presented: (1) Whether the petitioners are entitled to a loss deduction in the amount of $38,250 claimed as a result of the transaction whereby George F. Arata exchanged 765 shares of his stock in Snyder & Black for 765 worthless shares of stock in Salers, Incorporated; (2) whether petitioners are liable for additions to tax under the provisions of sections 294 (d) (1) (A) and 294 (d) (2), I. R. C. 1939.

### FINDINGS OF FACT.

Most of the facts were stipulated and together with attached exhibits are incorporated herein by this reference.

The petitioners are husband and wife with residence at Five Mile River Road, Darien, Connecticut. They filed a joint income tax return for the year 1953 with the district director of internal revenue at Hartford, Connecticut. Carolyn M. Arata is apparently a party in this proceeding only because she joined with her husband in filing a joint return for the year 1953. George F. Arata will sometimes hereinafter be referred to as the petitioner.

At all times here in issue petitioner was president and a director of Snyder & Black, a New York corporation having its principal office in New York City. Snyder & Black is engaged in the business of creating and manufacturing lithographic advertising. Lithographic advertising is primarily the color printing of posters, calendars, booklets, and various related types of display advertising material.

Petitioner is also president and a director of a wholly owned subsidiary of Snyder & Black, Black Building Corporation, also a New York corporation. The business carried on by Black Building Corporation is the ownership and operation of the 11-story building at 200 William Street, New York City, four-fifths of which is occupied by Snyder & Black.

Petitioner was president and a director of 200 William Street Corporation, which was another wholly owned subsidiary of Snyder & Black. 200 William Street Corporation, now inoperative, was the predecessor of Black Building Corporation and carried on the same business as that now carried on by Black Building Corporation.

Petitioner advanced capital in connection with the formation of a corporation known as American Lithograph and was its vice president and a director during the year involved. During the year 1953 he was president of the 415 Norwood Corporation, and a stockholder and director of two corporations known respectively as Coca-Cola Bottling Company of Wheeling, West Virginia, and Coca-Cola Bottling Company of Hartford, Connecticut. He was also a stockholder and former officer of Coca-Cola Bottling Plants, Inc., which was the franchised Coca-Cola bottler operating in the States of Maine and New Hampshire. Petitioner advanced capital in connection with the formation of 415 Norwood Corporation and all of the Coca-Cola bottling companies referred to above.

A New York corporation called "The Tollgate House, Incorporated" was organized on April 24, 1946, and a certified copy of its certificate was filed in New York City, the place of its principal office. The name of "The Tollgate House, Incorporated," was changed to "Salers, Incorporated," sometimes hereinafter referred to as Salers. Salers' personnel consisted mainly of commercial artists, designers, and engineers who had extensive experience in the advertising display business and who were engaged in furnishing original designs and ideas for display advertising. Snyder & Black was the selling agent for Salers.

Salers was authorized to issue 200 shares of common stock without par value. The entire 200 shares of Salers' capital stock were originally subscribed to and paid for by Snyder & Black. On November 21, 1946, Salers' charter was amended to increase its authorized capital stock from 200 to 1,000 shares of common stock without par value. By action of the board of directors of Salers on January 10, 1947, the price at which the shares were to be issued was fixed at $115 per share.

During 1953 Salers encountered financial difficulty and was unable to meet its bank loan. During this period Snyder & Black advanced to Salers funds to meet its payroll in order to enable Salers to continue operations. In November 1953, a report to the board of directors of Salers indicated that the operations of Salers for 1953 had resulted in a considerable loss. The petitioner was fully aware of the financial difficulties and business losses suffered by Salers.

In November 1953, Snyder & Black purchased for $1 all the assets of Salers subject to all its liabilities and thereafter Salers ceased to do business. The common stock of Salers was worthless as of November 10, 1953. At that time petitioner presented certain of his

common stock certificates in Snyder & Black to its treasurer and directed him to issue certificates of stock in Snyder & Black to the stockholders of Salers. Each stockholder of Salers received the exact number of shares in Snyder & Black that he had previously held in Salers. In exchange for his stock in Snyder & Black, petitioner received from the stockholders of Salers their worthless stock in the latter corporation. At this time the value of common stock of Snyder & Black was $50 per share.

The individual shareholders of Salers throughout its existence, the number of shares held, the holders of common stock of Snyder & Black, immediately prior and immediately subsequent to the above-described transaction, and the net change in stockholdings in Snyder & Black resulting from such transaction are reflected in the schedule below:

NUMBER OF SHARES HELD IN CORPORATIONS

| Name of shareholder | Salers (prior to transaction) | Snyder & Black (prior to transaction) | Snyder & Black (subsequent to transaction) | Net change, gain (or reduction) of shareholders of Snyder & Black as a result of transaction |
|---|---|---|---|---|
| Snyder & Black | 125 | | | |
| George F. Arata | 235 | 8,191 | 7,426 | (765) |
| Carolyn M. Arata | | 135 | 135 | |
| Frank Springer-Miller[1] | 308 | | 308 | 308 |
| George S. Snyder[1] | 60 | | 60 | 60 |
| Walter G. Roeder[1] | 50 | | 50 | 50 |
| Homer H. Johnson | 70 | 875 | 945 | 70 |
| Joseph L. Viscount | 20 | 2,145 | 2,165 | 20 |
| E. Russell Palmer[1] | 15 | | 15 | 15 |
| Alfred C. B. McNevin | 10 | 240 | 250 | 10 |
| Louis J. Arata | 10 | 290 | 300 | 10 |
| Theodore B. Arata | 10 | 950 | 960 | 10 |
| James L. McNevin | 5 | 95 | 100 | 5 |
| F. J. Woerner | 5 | 78 | 83 | 5 |
| Claire Thain | 4 | 121 | 125 | 4 |
| Katherine Viscount | 3 | 122 | 125 | 3 |
| Paul Jepson[1] | 50 | | 50 | 50 |
| Gertrude A. LaMothe | 20 | 580 | 600 | 20 |
| William L. Arata | | 960 | 960 | |
| George F. Arata, Jr | | 960 | 960 | |
| George F. Arata, trustee | | 960 | 960 | |
| Carl George | | 100 | 100 | |
| G. C. Lauckhardt | | 150 | 150 | |
| Loretta E. McNevin | | 25 | 25 | |
| Reese F. Rickards | | 35 | 35 | |
| Orrin H. Stark | | 125 | 125 | |
| Total number of shares outstanding | 1,000 | 17,137 | 17,012 | [2] (125) |

[1] Shareholders who apparently were the principal production personnel of Salers.
[2] 125 of the shares of Snyder & Black stock which were transferred by petitioner to Snyder & Black in the consummation of this transaction were retained by that corporation as treasury stock and were not canceled.

The preferred stock of Snyder & Black immediately prior and immediately subsequent to the above-described transaction was held as follows:

## PREFERRED SHARES

| Name of shareholder | Number of shares held | Name of shareholder | Number of shares held |
|---|---|---|---|
| George F. Arata | 81 | G. C. Lauckhardt | 11 |
| Theodore B. Arata | 45 | J. L. McNevin | 5 |
| George F. Arata Trust, F. A. Naphen | 25 | M. E. Barlow | 50 |
| | | F. Pfister | 2 |
| William L. Arata | 45 | H. Spitz | 2 |
| George F. Arata, Jr. | 45 | G. A. Schmidt | 3 |
| Louis J. Arata | 47 | E. Then | 3 |
| E. A. Astheimer | 5 | K. C. Viscount | 40 |
| C. Yates | 112 | J. F. Walsh | 50 |
| E. M. Bolton | 35 | F. A. Woerner | 5 |
| Estate of L. V. C. Bolton | 550 | F. S. Yates | 50 |
| J. Burgess | 10 | G. T. Yates (M. D.) | 20 |
| W. Enners | 10 | A. C. B. McNevin | 20 |
| A. B. Ferguson Johnson | 30 | | |
| G. Kamps | 2 | Total | 1,368 |
| G. A. LaMothe | 65 | | |

The value of the preferred stock of Snyder & Black in November 1953 was $100 per share.

At the time of the trial herein, the value of Snyder & Black common stock was estimated to be $68 per share.

At the time he entered into the transaction referred to above, petitioner knew that the stock of Salers was worthless.

When the stockholders of Salers originally acquired their stock in Salers, petitioner did not promise to indemnify or guarantee any one of them against loss on his or her investment and none of them was obligated to work for Snyder & Black after the transaction occurred.

Frank Springer-Miller was the president of Salers at all times here involved. Prior to the time petitioner transferred his stock in Snyder & Black to Frank Springer-Miller, George S. Snyder, Walter G. Roeder, and E. Russell Palmer in the manner described above, none of these individuals had stated that he was going to seek employment with a competitor of Snyder & Black. Paul Jepson had told petitioner that he intended to seek employment with a competitor of Snyder & Black. Subsequent to the transfer, all of these persons were employed by Snyder & Black at the same salaries they had received from Salers.

At all times involved, Homer H. Johnson, Joseph L. Viscount, and Alfred C. B. McNevin were, respectively, vice president, director, and general counsel of both Salers and Snyder & Black.

Katherine Viscount is the wife of Joseph L. Viscount. Louis J. Arata is the brother of petitioner and at all times involved was secretary of Snyder & Black. Theodore B. Arata, George F. Arata, Jr., and William L. Arata are all sons of the petitioner. James L. McNevin is the brother of Alfred C. B. McNevin and at all times here in issue was the treasurer of both Salers and Snyder & Black. Claire Thain

is the wife of the art director of Snyder & Black. Gertrude L. La-Mothe is the widow of William LaMothe who was a former director of Snyder & Black.

On their income tax return for the year 1953, petitioners reported as long-term capital loss the amount of $27,025 with respect to 235 shares of Salers stock, and in connection therewith they deducted from gross income the amount of $1,000. Respondent made no adjustment with respect to this item.

On such return petitioners deducted $38,250 characterized thereon as "loss on 765 shares Salers, Incorporated, Common Stock at $50.00 per share declared worthless by Corporation March 1953." Respondent entirely disallowed such claimed loss, stating in the notice of deficiency, "It has been determined that in the transaction by which you exchanged 765 shares of the capital stock of Snyder & Black, Inc., for 765 shares of the capital stock of Salers, Inc., during the year 1953, you did not sustain a loss which is deductible, in any amount, under the provisions of Internal Revenue Code of 1939."

OPINION.

Petitioners have assigned error to respondent's disallowance of their claimed deduction in the amount of $38,250. They have the burden of proving respondent's determination erroneous.

Petitioners contend that such amount, which represents the value of 765 shares of stock of Snyder & Black at the time of the transaction involved, is deductible as a loss under the provisions of section 23 (e) (1) or (2), I. R. C. 1939.[1] Section 23 (e) (1) provides for the deduction of a loss which is sustained in the taxable year if incurred in trade or business. Petitioners contend that George F. Arata was a "business entrepreneur" and that he was in the business of supplying capital to various corporate enterprises. They contend that the claimed loss was incurred in such business.

Whether a particular loss or expense is incurred in a taxpayer's trade or business is a question of fact in each particular case. *Higgins* v. *Commissioner*, 312 U. S. 212. It has long been established that the business of a corporation is considered to be separate and apart from the business of its officers and stockholders. *Dalton* v. *Bowers*, 287 U. S. 404; *Burnet* v. *Clark*, 287 U. S. 410; *Deputy* v. *DuPont*, 308 U. S. 488. Here, the petitioner does not seek to attribute the business

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

of any corporation to himself. Rather, he has attempted to demonstrate that he is in the business of financing corporations. To do so the petitioners have introduced testimony of the petitioner and other evidence relating to petitioner's connection with various corporations. Petitioner testified and we have found that he advanced capital in connection with the formation of five corporations. The record shows that he was a director and officer of various corporations.

A taxpayer has been regarded as being in the business of financing corporations only in the exceptional situation where extensive activity of that nature has been demonstrated. *Henry E. Sage*, 15 T. C. 299; *Vincent C. Campbell*, 11 T. C. 510; cf. *Charles G. Berwind*, 20 T. C. 808, affirmed per curiam 211 F. 2d 575; *Thomas Reed Vreeland*, 31 T. C. 78. Here the record does not disclose the nature of petitioner's capital advances in connection with the formation of the corporations. There is no showing as to the amount of capital so advanced, the frequency of such activity, and the amount of petitioner's time and effort which was involved therein. From the evidence presented, we are unable to find that petitioner was in the trade or business of financing corporations and, accordingly, the contention that the claimed loss is deductible under section 23 (e) (1) may not be sustained.

Assuming, *arguendo*, that petitioner was in the business of financing corporations in 1953, it does not follow that the claimed loss is allowable unless it was incurred in such business. It appears that the claimed loss was a result of petitioner's exchange of Snyder & Black stock in return for worthless Salers stock. In this posture we cannot find that this transaction was a part of petitioner's alleged business of financing corporations or that the claimed loss was incurred in such business.

Petitioners cite *Commissioner* v. *Macy*, 215 F. 2d 875, affirming 19 T. C. 409, and *Urquhart* v. *Commissioner*, 215 F. 2d 17, reversing 20 T. C. 944, in support of their contention. Those cases are distinguishable. *Macy* involved certain expenditures made by trustees in settlement of controversies over their accounts. Contrary to those presented here, the facts in that case demonstrated that the activities of the trustees in managing the affairs of the estate were so extensive and involved such a considerable amount of the trustees' time over about a 12-year period, that the trustees were found to be engaged in a trade or business. The only issue presented to the appellate court was whether the expenditures involved were "ordinary and necessary" within the meaning of section 23 (a) (1) (A), I. R. C. 1939. In *Urquhart*, which involved litigation expenses incurred by two joint venturers in connection with a patent infringement suit, it was undisputed that the taxpayers were carrying on a business. The sole issue for decision was

whether the expenses were "ordinary and necessary" or capital in nature.

Petitioners alternatively contend that the claimed loss is deductible under section 23 (e) (2), which provides for the deduction of losses "if incurred in any transaction entered into for profit, though not connected with the trade or business." Respondent contends that no deduction is allowable under this section because the transaction involved was not entered into for profit.

Deductions are matters of legislative grace and the taxpayer must bring himself squarely within the statute under which the deduction is claimed. *New Colonial Co.* v. *Helvering*, 292 U. S. 435; *Deputy* v. *DuPont*, *supra*. To secure a loss deduction under section 23 (e) (2) it is necessary that the "taxpayer's motive in entering into the transaction was primarily profit." See *Helvering* v. *National Grocery Co.*, 304 U. S. 282, 289, note 5; *Feine* v. *McGowan*, 188 F. 2d 738; *Ewing* v. *Commissioner*, 213 F. 2d 438, affirming 20 T. C. 216. In these circumstances, the intent of the taxpayer is crucial. *Ewing* v. *Commissioner*, *supra*.

Petitioner apparently contends that his purpose in entering into such transaction was to persuade the Salers personnel who held Salers stock to commence working for Snyder & Black rather than seek employment with a competitor. His profit motive was not clearly explained, but he appears to argue that the "profit" for which he entered into the transaction was the increase in value of his Snyder & Black stock which he anticipated would result from the increased profits of Snyder & Black following the employment of the Salers personnel. The facts presented are not sufficient to establish that petitioner's purpose and motive were as represented. Although petitioners contend that the transaction involved was entered into because it was felt that such transaction was necessary to keep the Salers personnel as employees of Snyder & Black and thus keep them from working for competitors, petitioner admitted on cross-examination that with one exception the personnel of Salers never indicated to him that they were going to seek employment with a competitor of Snyder & Black. Also contradictory to such stated purpose is the fact that after the transaction was consummated, the personnel remained under no obligation to work for Snyder & Black. It is also to be noted that of the 765 shares of stock which petitioner exchanged, 157 shares were transferred to persons who already owned a number of shares of Snyder & Black stock, some of whom were members of petitioner's immediate family. In these circumstances, it does not appear likely that such persons would have sought the employment of a competitor, and petitioners have offered no explanation as to why such transfer was made. We note further, that in the transaction 125 of petitioner's shares were transferred to Snyder & Black and held as treasury stock.

Petitioner's purpose in making this transfer was likewise unexplained. We also note that several of the individuals to whom petitioner transferred stock were not a part of Salers' personnel. Petitioners have failed to demonstrate why transfer of Snyder & Black stock to such individuals was necessary to persuade the personnel of Salers to work for Snyder & Black. All of the facts and circumstances of this case, when viewed as a whole, strongly suggest that the transaction involved was merely the voluntary indemnification by petitioner of the losses suffered by Salers' shareholders.

As we have previously pointed out, a deduction is not allowable under section 23 (e) (2) unless the expectation of profit was the taxpayer's prime motive for entering into the transaction, and the burden is upon the taxpayer to prove such factor. On the facts presented, we hold that such burden has not been sustained.

Even if we assume that petitioner's purpose in entering into such transaction was to secure the services of the Salers personnel for Snyder & Black, petitioner's position may not be sustained. A taxpayer is not entitled to a deduction under section 23 (e) (2) unless he *personally* expected to profit from the transaction. The fact that profit therefrom might be or was intended to be realized by another is not sufficient. *Willoughby H. Stuart, Jr.*, 32 B. T. A. 574, affd. 84 F. 2d 368, certiorari denied 299 U. S. 575. See also *Commissioner* v. *Macy, supra,* at p. 879. We have held that a loss was not deductible under provisions identical to those of section 23 (e) (2) when the only profit that the taxpayer expected to receive out of the transaction was the indirect benefiting of his stockholdings which he hoped would result from anticipated increase in corporate profits. *Pierre S. DuPont,* 37 B. T. A. 1198, 1277, affirmed without discussion of this point 118 F. 2d 544, certiorari denied 314 U. S. 623, rehearing denied 314 U. S. 707. Cf. *Charles Benson Wigton,* 13 T. C. 323.

Initially, it is to be noted in the instant case that petitioner could not have expected to profit directly out of the transaction because, as he knew, the stock of Salers which he acquired therein was worthless when he acquired it. Furthermore, if the Salers personnel were persuaded to work for Snyder & Black as a result of such transaction, it is manifest that any direct benefits or profits therefrom would accrue only to Snyder & Black. The profit of Snyder & Black which petitioner may have anticipated to result from such transaction is not sufficient to bring any loss incurred therein within the scope of the deduction allowed by section 23 (e) (2). *Willoughby H. Stuart, Jr., supra; Goldsborough* v. *Burnet,* 46 F. 2d 432. As we have noted above, it appears that the only "profit" which petitioner personally may have expected to derive from the transaction was the indirect and incidental benefit of more valuable stock expected to result from the

profit increases of Snyder & Black which might be anticipated to follow the employment of the Salers personnel. In the circumstances presented, the "profit" which petitioner may have expected to receive personally out of the transaction involved is so contingent and remote that a loss incurred therein is without the scope of the deduction allowable under section 23 (e) (2). *Pierre S. DuPont, supra.*

The petitioners have cited *Ernest E. Lloyd*, 8 B. T. A. 1029; *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214; and *Owen v. United States*, (D. Neb.) 99 F. Supp. 855, as supporting their contention. Those cases are distinguishable. In *Lloyd*, no question was presented as to whether the loss in issue was incurred in a transaction entered into for profit. In *Lloyd-Smith*, the loss was the result of the taxpayer's payment of expenses of a bondholders' committee and certain legal expenses, all of which were incurred to reduce the taxpayer's direct liability as a guarantor of certain bonds issued by a corporation with which she was heavily involved. The Court allowed the deduction as a loss incurred in a transaction entered into for profit because the purpose of such transaction (the payment of such expenses) was to reduce taxpayer's personal liability as a guarantor. It was specifically noted that under the facts of that case, the payments were *not* made with the idea of protecting or adding to the taxpayer's stock investment in the company. In *Owen*, the loss involved was incurred as a result of a series of stock purchases and sales whereby the taxpayer acquired control of a corporation.

Assuming, *arguendo*, that the transaction comes within the scope of section 23 (e) (2), it does not follow that petitioner's position may be sustained. The profit which he anticipated was necessarily in increased stock values. Petitioner testified at the trial that the transaction had "paid off" and the evidence discloses that the value of Snyder & Black common stock has increased since the transaction. In these circumstances and viewing the transaction in this manner, petitioners have failed to demonstrate that a loss has been sustained. Cf. *Frank C. Paine*, 37 B. T. A. 427, affd. 102 F. 2d 110.

Considering all the facts and circumstances, we sustain respondent on the first issue. This disposition renders unnecessary any discussion of respondent's alternative contention that certain amounts of the claimed loss are not deductible because of the provisions of section 24 (b) (1) (A), I. R. C. 1939.

Respondent determined that petitioners were liable for additions to tax under sections 294 (d) (1) (A) and 294 (d) (2), I. R. C. 1939. Although petitioners assigned error to this adjustment, they did not present any evidence with respect thereto. They have failed to sustain their burden of proof and respondent's determination is accordingly sustained.

*Decision will be entered for the respondent.*